IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Craig B. Shaffer**

Civil Action No. 05-cv-01382-PSF-CBS

RONALD L. MINOR,
Plaintiff,

v.

J.E. GUNJA, Warden,
OSCAR ACOSTA, Information Officer,
RIOS, Associate Warden,
L. SMITH, DHO,
JOHN DOE, Unit BB Councelor [sic],
sued in their Individual and Official Capacities,
Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Craig B. Shaffer**

        This matter comes before the court on Defendants' Motion to Dismiss [#42], filed

January 30, 2006.  Pursuant to an Order [#9] dated October 6, 2005, this matter was

referred to the Magistrate Judge to, *inter alia,* "submit proposed findings of fact and

recommendations for rulings on dispositive motions."  (Order [#9]).  Pursuant to a

Memorandum [#43] dated January 30, 2006, the Motion to Dismiss was referred to the

Magistrate Judge for a recommendation.  The court has reviewed the Motion to

Dismiss, Plaintiff's Response [#52], filed March 1, 2006, Defendants' Reply [#53], filed

March 16, 2006, the exhibits, the entire case file, and the applicable law and is

sufficiently advised in the premises.

        Plaintiff's Complaint should be dismissed because this Court lacks subject

matter jurisdiction; Plaintiff has failed to exhaust his administrative remedies; and

Plaintiff has failed to state a claim upon which relief may be granted against the named

Defendants.  Defendant Smith has never been served in this action, therefore, no entry

of appearance is made on his behalf.  However, to the extent that Plaintiff's claims are

procedurally barred from being asserted, this Court should dismiss the allegations

against Defendant Smith as well.  Although listed as "John Doe" in the Complaint,

Defendant asserts that Thomas Quintana was easily identified as the Bravo/B

Correctional Counselor at that time.  Defendant Quintana has waived service and joins

Defendants' Motion to Dismiss. Therefore, the court recommends dismissal of this

action against all Defendants, including Defendant "John Doe."

I.      **Background.**

    Plaintiff claims that Defendants violated his Eighth Amendment rights by not

taking reasonable measures to guarantee his safety in light of his cell mate's threats

against him.  Further, Plaintiff alleges that the named Defendants acted with deliberate

indifference when they failed to transfer the Plaintiff to a different facility.

    Plaintiff was transferred from the Federal Correctional Institution (FCI) at

Florence, Colorado to the United States Penitentiary (USP) at Florence on June 10,

2002. (Exhibits A and B).  Plaintiff alleges that he informed John Doe (Quintana) of

threats made by his cell mate during first week of July 2002.  Plaintiff requested to be

moved to another cell because of his cell mate's  "aggressive" posture towards Plaintiff.

(Complaint, paragraphs 15 & 16).  Almost two months later, on August 22, 2002, his

2

cell mate attacked Plaintiff by throwing boiling oil on him and striking him with a lock

tied to a belt. (Complaint, paragraph 18).  The incident left Plaintiff with severe burns

and a head laceration.  On October 31, 2002, Plaintiff was transferred from USP

Florence to FCI Beckley, West Virginia. (Exhibits A & B).  Prior to the transfer, while at

USP Florence, Plaintiff failed to file a BP-9 grievance within the allowable 20 day time

frame. (Exhibit C, Declaration of Deborah A. Locke, para. 15.)  Yet, on April 11, 2003,

while incarcerated at FCI Beckley, Plaintiff filed a Request for Administrative Remedies,

referred to within the Bureau of Prisons as a BP-8, for the incident with his cell mate

occurring almost a year prior at USP Florence. (See Plaintiff's Complaint, unnumbered

Exhibit 1).  In his Request for Administrative Remedies, Plaintiff never alleged that he

filed any previous grievance while incarcerated at USP Florence, or that he was

awaiting a reply to such grievance. (*Id.*)  On April 14, 2003, Plaintiff filed a BP-9, in

response to the denial of relief from the BP-8 he had filed at FCI Beckley.  (Complaint,

unnumbered Exhibit 2.)  Plaintiff's BP-9 was rejected as being untimely as it was filed

nearly eight months after the incident. (Exhibit C, Locke Declaration, para. 16).

## II.    Standard of Review.

Excepting Defendant Smith, Defendants have moved to dismiss the Complaint

pursuant to **FED. R. CIV. P. 12(b)(1)** and **FED. R. CIV. P. 12(b)(6)**.  **FED. R. CIV. P.**

**12(b)(1)** attacks the existence of jurisdiction rather than the allegations of the

complaint.  Dismissal of an action is appropriate when the court lacks subject matter

jurisdiction over the action.  **FED. R. CIV. P. 12(b)(1)**.  A party challenging a federal

court's jurisdiction need not accept the factual allegations of the complaint as true. Instead, a "party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Stuart v. Colo. Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001); *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kominat,* 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002).  A court reviewing its jurisdiction pursuant to **FED. R. CIV. P. 12(b)(1)** "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Pringle v. United States,* 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir. 1995).  Consideration of matters outside of the pleadings pursuant to **FED. R. CIV. P. 12(b)(1)** does not convert the motion to a motion for summary judgment pursuant to **FED. R. CIV. P. 56**.  *Stuart,* 271 F.3d at 1225.          Alternatively, Defendants move to dismiss pursuant to **FED. R. CIV. P. 12(b)(6).** The standard of review in this matter must be understood in light of the special rules governing proceedings by prisoners *in forma pauperis* established by the Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996), codified at **28 U.S.C. § 1915.**  Specifically, the statute provides "the court shall dismiss the case at any time if the court determines that ... (B) the action ... fails to state a claim on which relief may be granted." **28 U.S.C. § 1915(e)(2)(B)(1)**.  Under § 1915, a court may dismiss claims on indisputably merit-less legal theories or claims in which the Plaintiff's factual allegations do not support an arguable claim.  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Under **FED. R. CIV. P.  12(b)(6)**, a motion to dismiss should be granted when it is

4

clear that the plaintiff can prove no set of facts that would support his claim and entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1244 (10th Cir. 1989). For purposes of determining whether a motion under **Rule 12(b)(6)** is proper, the well-pleaded factual allegations by the plaintiff are taken as true. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Nat'l Commodity*, 886 F.2d at 1244; *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, legal conclusions not reasonably supported by the alleged facts are not considered to be well-pleaded allegations. *Ivey v. Bd. of Regents of Univ. of Ala.*, 673 F.2d 266, 269 (9th Cir. 1982). All reasonable inferences must be resolved in favor of the non-moving party. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). The court should not dismiss a complaint under **Rule 12 (b)(6)** "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramirez v. Dep't of Corr.,* 222 F.3d 1238, 1240 (10th Cir. 2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

Since Petitioner appears *pro se,* this court will construe liberally his pleadings and other papers, holding them to a less stringent standard than formal papers filed by attorneys. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court may not be Plaintiff's advocate. *See id.* at 1110. A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). The Court should not "construct arguments or theories for the plaintiff in the absence of any discussion of

those issues." ***Drake v. City of Fort Collins***, 927 F.2d 1156, 1159 (10th Cir. 1991), nor

should it "supply additional factual allegations to round out a plaintiff's complaint."

***Whitney v. New Mexico***, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

**III.     Analysis.**

   **A.     Lack of Jurisdiction Over Official Capacity Claims.**

A party seeking to invoke federal jurisdiction has the duty to establish that such

jurisdiction is proper. ***Basso v. Utah Power & Light Co.***, 495 F.2d 906, 909 (10th Cir.

1974).   Since federal courts have limited jurisdiction, there is a presumption against

jurisdiction. ***Id.***  When a court lacks jurisdiction, it must dismiss with prejudice the

proceeding. **FED. R. CIV. P. 12(b)(1)**.   Further, when confronted with a suit against the

Federal Government or official capacity claims, the court must first determine whether

the Government has waived sovereign immunity.   "Absent a waiver, sovereign immunity

shields the Federal Government and its agencies from suit." ***Dep't of the Army v. Blue***

***Fox, Inc.***, 119 S.Ct. 687, 690 (1999).   However, any waiver of governmental immunity

must be narrowly construed in favor of the sovereign; a waiver of immunity will not be

implied. ***See Lane v. Pena***, 518 U.S. 187, 192 (1996).

Plaintiff brings this action against Defendants in their individual and official

capacities.   (Complaint).   However, there is no official capacity claim available in a civil

rights action. ***See FDIC v. Meyer***, 510 U.S. 471, 485 (1994); ***Kentucky v. Graham***,

473 U.S. 159, 166 (1985) (("A plaintiff seeking to recover on a damages judgment in an

official capacity suit must look to the government entity itself")); ***Monell v. Dep't of***

*Soc. Serv. of New York*, 436 U.S. 658, 691 (1978); *Munk v. Fed. Land Bank of Wichita*, 791 F.2d 130, 132 (10th Cir. 1986).  The United States has not waived its sovereign immunity for constitutional misconduct. *See FDIC v. Meyers*, 510 U.S. at 477-78 (holding actions for constitutional torts may not lie against the United States).

Plaintiff concedes in his Response that "any and all language referring to 'official capacity' . . . was inadvertantly (sic) included in the complaint and [Plaintiff] strikes and abandons any and all such language from the action."  (Response, pp. 1-2)  Therefore, the claims against Defendants in their official capacity should be dismissed for lack of subject matter jurisdiction, pursuant to **FED. R. CIV. P. 12(b)(1)**.  *See Hurtado v. Reno*, 34 F. Supp. 2d 1261, 1264 (D. Col. 1999) (holding official capacity claims based on constitutional violations are barred by the doctrine of sovereign immunity and must be dismissed).

### B.    Statute of Limitations Bars Individual Capacity Claims.

To the extent Plaintiff's claims are asserted against Defendants in their individual capacities, Plaintiff's claims are barred by the applicable statute of limitations.  It is well settled that *Bivens* actions are subject to the statute of limitations found in the general personal injury statute of the state in which the action arose. *Van Tu v. Koster*, 364 F.3d 1196, 1198 (10th Cir. 2004).  Because the alleged violations occurred in Colorado, the Colorado statute of limitations applies.  The applicable statute of limitations is found in **§ 13-80-102, C.R.S.,**  which provides for a two-year statute of limitations in such actions.  *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th

Cir. 1993) (applying § 13-80-102 to § 1983 claim);   *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1221 (D. Colo. 2001).         Plaintiff filed the Complaint on July 25, 2005. However, he alleges violations of his constitutional rights in 2002.  Plaintiff maintains that he filed a timely action in the Eastern District of Kentucky on September 3, 2004, but that action was dismissed for improper venue on March 4, 2005.   Relying on *Burnett v. New York Cent. R.R.,* 380 U.S. 424, 430 (1965), Plaintiff initiated the present lawsuit on March 24, 2005, claiming that equitable tolling applies because his Kentucky case was timely when filed.   However, *Burnett* addresses tolling in FELA actions, inapposite to statute of limitations considerations under PLRA.  *See Id.* (holding that employee's Ohio court FELA action tolled federal limitation provision, although Ohio action was dismissed for improper venue, and employee's federal court action, commenced eight days after dismissal but more than three years after action accrued, was timely).  Plaintiff fails to cite authority applying tolling principles to *Bivens* actions.

       Even assuming Plaintiff's tolling argument is valid, Plaintiff's claims are barred by the statute of limitations.  Plaintiff's Complaint alleges conduct that occurred in August, 2002.  Plaintiff initiated his Kentucky action in September 3, 2004, one month and two years after the alleged conduct.  Therefore, to the extent the plaintiff seeks relief resulting from any alleged constitutional violation that occurred prior to July 26, 2003, those claims are barred by the applicable statute of limitation period and should be dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

**C.     Plaintiff's Complaint Does Not Have Jurisdiction Under 28 U.S.C. § 1343.**

The plaintiff asserts jurisdiction pursuant to **28 U.S.C. § 1343**. (Complaint, p. 3.) Because Plaintiff does not allege a conspiracy under **42 U.S.C. § 1985**, presumably he attempts to assert a § 1983 action; therefore, the only provision of **28 U.S.C. § 1343** under which the plaintiff asserts jurisdiction is **§ 1343(a)(3)**.  However, the Court does not have subject matter jurisdiction over such claims asserted against federal officials. *Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987) ("28 U.S.C. § 1343(a)(3) does not confer jurisdiction upon the district court to adjudicate a 42 U.S.C. § 1983 action against federal officials").  In fact, Plaintiff concedes in his Response that any reference to **28 U.S.C. § 1343** was made in error.  (Response, pp. 1-2)  Therefore, any prayer for relief under **28 U.S.C. § 1343** should be dismissed pursuant to **FED. R. CIV. P. 12(b)(1).**

**IV.     Plaintiff's Complaint  Must be Dismissed for Failure to Exhaust Administrative Remedies.**

Alternatively, Plaintiff's claims should be dismissed on exhaustion grounds under **FED. R. CIV. P. 12(b)(1)**.  Claims must be appropriately exhausted prior to filing suit in federal court. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (rejecting plaintiff's assertion that he did not have to complete the grievance process properly). To survive a Rule 12(b)(1) motion, Plaintiff must demonstrate total exhaustion.  That is, if each and every claim in the Complaint is not exhausted through the administrative remedy process, the entire Complaint should be dismissed. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004) (requiring total exhaustion of each

9

claim against each Defendant).  While it is not clear exactly how much an inmate must include in an administrative grievance to satisfy the exhaustion requirement, at a minimum, **42 U.S.C. § 1997e(a)** "requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations as the prisoner reasonably can provide.  It does not require him to provide information he cannot reasonably obtain, nor does it require him to inform those who will pass on his grievance of the identity of the warden or prison commissioner." ***Brown v. Sikes***, 212 F.3d 1205, 1210 (11th Cir. 2000).

The Bureau of Prisons has promulgated a four-level administrative remedy system codified at **28 C.F.R. §§ 542.10 to 542.16.**  At the first level, an inmate must attempt informal resolution with prison staff.  **28 C.F.R. § 542.13.**  Next, an inmate needs to submit a formal request for Administrative Remedy on a BP-9 form ("BP-9") within 20 calendar days of the precipitating event.  **28 C.F.R. § 542.14.**  If not satisfied with the Warden's response to his BP-9, an inmate may file a BP-10 form with the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  Finally, an inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate BP-11 form to the General Counsel within 30 calendar days of the date the Regional Director signed the response.  **28 C.F.R. § 542.15**.  An inmate has not exhausted his administrative remedies until he has filed a remedy request at each level, within the established time frames. However, the time limits may be extended when the inmate demonstrates a valid reason for delay. **28 C.F.R. § 542.14**.  Valid reasons for delay includes situations which prevented the

inmate from submitting the request within the established time frame.  **28 C.F.R. §§ 542.14(b).**  Otherwise, if an inmate does not comply with the time limits laid out in **28 C.F.R. § 542**, he has not properly exhausted his administrative remedies. ***Ross***, 365 F.3d at 1186.

Further, the PLRA contains a procedural default concept within its exhaustion requirement. ***Patel v. Fleming,*** 415 F.3d 1105, 1109 (10th Cir. 2005).  "A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted.  Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he has exhausted his administrative remedies by, in essence, failing to employ them." ***Id.*** at 1109 (quoting ***Ross***).  ***But see Jernigan v. Stuchell,*** 304 F.3d 1030, 1032 (10th Cir.2002) (finding that a prison's failure to make a timely response to an inmate's grievance makes an administrative remedy unavailable).  When an inmate fails to submit an administrative remedy request in a timely manner, the court should not consider the complaint. ***See id.***  Further, an allegation in the complaint that a grievance was unanswered does not establish exhaustion. ***Blay v. Reilly***, No. 04-1347, 2005 WL 2822458, *2 (10th Cir. Oct. 28, 2005).  A bare allegation that Plaintiff submitted requests to staff that were unanswered do not satisfy "the particularized averments of exhaustion that our case law requires." ***Snyder v. Whetsel***, No. 04-6242, 2005 WL 2660497, *1 (10th Cir. Oct. 19, 2005).

Plaintiff incorrectly states that he exhausted his administrative remedies.

(Complaint, p. 7).  Plaintiff filed an untimely administrative remedy request regarding the physical alteration with his cell mate while incarcerated at FCI Beckley. (Exhibit C, Locke Declaration.).  This administrative remedy was rejected by the Regional Office on various grounds, including Plaintiff's failure to file a grievance at the appropriate level. *(Id.)*  Plaintiff concedes that any attempt to exhaust was untimely; yet, "equitable tolling was appropriate where Plaintiff had sustained serious injuries and was heavily mediated for several days." (Response, p. 2)  Plaintiff claims that he was placed in Administrative Detention where he had limited access to staff.  He claims that any attempts at exhaustion were futile.   Plaintiff argues that "if not for the serious injuries, the prolonged isolation in Administrative Detention, and the delays associated with a transfer . . .Plaintiff's Administrative remedies would have been timely." (Response, pp. 2-3).

However, in his attachments, Plaintiff suggests a different reason for failing to file a timely grievance: he did not receive a response to his BP-8 filed at USP Florence. Even if Plaintiff did not receive a response to his BP-8, and therefore, could essentially not attach it to his BP-9, this alleged failure to provide a response to the BP-8 does not excuse the requirement that Plaintiff exhaust the administrative remedy process.  If Plaintiff believed he was receiving an untimely response to his BP-8, he retained the ability to file a BP-9 at USP Florence and to inform the Administrative Remedy Coordinator (ARC) that he had not received a response to his BP-8.  The ARC could have excused the requirement that the plaintiff attach a copy of the BP-8.  **28 C.F.R. § 542.13(b) &  § 542.14(b)**.

12

However, there is no evidence that Plaintiff ever made such attempt;  instead, the evidence shows Plaintiff did not submit a grievance (BP-9) on this issue until more than seven months after the assault occurred.  The grievances and appeals that he finally submitted at FCI Beckley were rejected as being untimely, thereby constituting a procedural default.  However, this does not excuse the Plaintiff's failure to exhaust his administrative remedies.

Review of Unnumbered Exhibits 2-4 supports Defendants' contention that Plaintiff failed to exhaust. As purported evidence of exhaustion, Plaintiff attaches a Request for Administrative Remedy (BP-9), which was received at FCI Beckley, West Virginia, on April 15, 2003.  In this BP-9, Plaintiff alleges he was assaulted on August 22, 2002, at USP Florence. (Unnumbered Exhibit 2).   Without describing in the grievance the nature of the constitutional violation and facts or allegations to tie any individuals to the violations, Plaintiff did not place prison officials on notice of his claims against the Defendants.  Plaintiff alleges he notified "authorities" of the potential danger by submitting administrative remedies and by verbal communication. (*Id.*)  He requested "an explanation of the administrations deliberate indifference." (*Id.*)  Plaintiff further requested monetary damages. (*Id.*) Plaintiff did not identify any specific acts by any of the specific Defendants that violated his constitutional rights. (*Id.*)  Plaintiff did not attach any response to the BP-9; nor did he otherwise provide any evidence this BP-9 was actually accepted by the institution.

Also as purported evidence of exhaustion, Plaintiff attaches a Regional Administrative Remedy Appeal (BP-10), received at the Mid-Atlantic Regional Office on

13

May 12, 2003. (Unnumbered Exhibit 3.)  In this BP-10, the plaintiff alleges he filed a

BP-8 at USP Florence, but was never given a response. (*Id.*)  The remainder of the BP-

10 is essentially the same as that of the BP-9. (*Id.*)  Again, Plaintiff did not identify the

specific acts of any of the specific Defendants that violated his constitutional rights.

(*Id.*) Nor did Plaintiff provide any response to the BP-10.  Plaintiff also submits a

Central Office Administrative Remedy Appeal (BP-11). (Unnumbered Exhibit 4.)  In the

BP-11, Plaintiff alleges his BP-9 complaint was timely and that he has "no control over

mailing procedures which may play a role in the receiving of such matters. (*Id.*)  As

such, he requested his issues be heard. (*Id.*)  In the BP-11, Plaintiff again alleges he

submitted a BP-8 form at USP Florence, but was never given a response. (*Id.*)  He also

alleges he was assaulted on August 22, 2002, and that prior to the assault he notified

"staff" of the potential danger to his person through administrative procedures and

verbal communication. (*Id.*)  Plaintiff further alleges "the administration" did nothing in

response nor attempted to avert the alleged threat. (*Id.*)  Thus, he requested an

explanation for the "administrations'" deliberate indifference and monetary damages.

(*Id.*)  Plaintiff did not identify the specific acts of any of the specific Defendants that

violated his constitutional rights. (*Id.*)  Nor did he provide any response to the BP-11.

According to Defendants, review of the SENTRY database records regarding

administrative remedies filed by Plaintiff, reveals Plaintiff did not exhaust his

administrative remedies with respect to the allegations contained in the Complaint.

(Exhibit C, Locke Declaration, Attachment 1.)  Review further reveals Plaintiff filed a

total of four administrative remedies while incarcerated at USP Florence. (*Id.*)  The first

remedy he filed was assigned Remedy Number 270906-F1. (*Id.*) In this request,
Plaintiff requested a reason for his transfer to USP Florence and requested to be
returned to FCI Florence. (*Id.*) Plaintiff's request was denied.  (*Id.*)  Plaintiff's remaining
three administrative remedy requests/appeals filed while at USP Florence alleged
discrimination by the Chaplain. *(Id.)*

Although the Plaintiff was attacked more than two months before he was
transferred from USP Florence– and had 20 days pursuant to the federal regulations
governing the administrative remedy process– he failed to attempt to file a Request for
Administrative Remedy (BP-9) at the institutional level at FCI Florence. (*Id.*) Nowhere in
Plaintiff's Complaint or Response does Plaintiff claim that he requested an extension of
time to file a grievance or that he made such a request and was denied.   It was not until
April 15, 2003, while at FCI Beckley that he attempted to file an administrative remedy
regarding the assault that occurred on August 22, 2002. (*Id.*) Specifically, Remedy
Number 296425-F1, was received at FCI Beckley on April 15, 2003. *(Id.)* It was rejected
as "UTF," which means it was not filed within the twenty days time frame. (Exhibit C,
Locke Declaration, Attachment 2.)

Plaintiff appealed the rejection in Remedy Number 296425-R1. (Exhibit C, Locke
Declaration, Attachment 1.)  However, this appeal was also rejected as "WRL," which
means it was filed at the wrong level, and should have been filed at the institution level
instead. (Exhibit D, Administrative Remedy Update for Appeal Number 296425-R1.)
Plaintiff was also informed that this appeal was submitted to the incorrect regional office.
*Id.*  Plaintiff resubmitted the appeal to the appropriate regional office in Appeal Number

296425-R2. (Exhibit C, Locke Declaration, Attachment 1.)  However, this appeal was rejected as "UTF." (Exhibit C, Locke Declaration, Attachment 3.)  Plaintiff was informed that the regional office was upholding the institution's rejection. *(Id.)*  Plaintiff appealed the rejection of the Regional Office appeals in Appeal Number 296425-A1. (Exhibit C, Locke Declaration, Attachment 1.)  This appeal was also rejected by Central Office as "UTF." (Exhibit C, Locke Declaration, Attachment 4.)  Plaintiff was informed that the Central Office concurred with the regional office's rationale for rejecting the appeal. *(Id.)*

Although the Plaintiff alleged in his BP-10 at FCI Beckley that his remedy was not timely because he allegedly submitted a BP-8 at USP Florence to which he did not receive a response, *(see* unnumbered Exhibit 3), Plaintiff does not provide any evidence supporting his allegation.  Even if the Plaintiff did not receive a response to an alleged BP-8, he retained the ability to exhaust his administrative remedies while at USP Florence within the applicable time provisions.  Indeed, pursuant to **28 C.F.R. § 542.13(b)**, "[a]n informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution." Additionally, **28 C.F.R. § 542.14(b)** states, "Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed."

As noted above, a valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.  The failure to file a request for informal resolution or to timely file a request for administrative remedy may

16

be waived when certain circumstances exist, and in particular, when the inmate can

show that such is warranted (e.g., extended period in-transit during which the inmate

was separated from documents needed to prepare the request or appeal,

unusually long period taken for informal resolution attempts, etc.).  **28 C.F.R. §**

**542.13(b) &  § 542.14(b)**.  Nevertheless, Plaintiff did not even attempt to file a request

for administrative remedy at USP Florence regarding the assault, despite having more

than two months to do so prior to being transferred.  (Exhibit C, Locke Declaration,

Attachment 1.)  If, in fact, Plaintiff did submit a request for informal resolution to which

he did not receive a timely response, he still had over one month and ten days following

the 20 day time frame in which to file a request for administrative remedy prior to his

transfer from USP Florence.  Nevertheless, Plaintiff chose not to even attempt to submit

a request for administrative remedy at the institution level explaining why he was either

unable to provide proof he attempted informal resolution or why he was filing outside the

20 day time frame and requesting these requirements be waived.  Furthermore, if

Plaintiff was truly trying to exhaust his administrative remedies regarding this issue in

compliance with the administrative remedy regulations, he should have attempted to do

so either while in transit or upon arrival at FCI Beckley on November 21, 2002.  Instead,

Plaintiff waited an additional four months to pursue administrative remedies.

     Because the Plaintiff failed to comply with the administrative procedures in a

timely manner, he did not properly exhaust his administrative remedies. (*See* Exhibit C,

Locke Declaration.)  Therefore, this complaint must be dismissed with prejudice

pursuant to **FED. R. CIV. P. 12(b)(1)**.

## V.      Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

### A.      Objective/Subjective Components of Eighth Amendment Claim.

Alternatively, Plaintiff has failed to state a claim against the named Defendants

pursuant to **FED. R. CIV. P. 12(b)(6)**.  Plaintiff alleges the Defendants violated his Eighth

Amendment by not guaranteeing his safety while incarcerated at USP Florence and by

assigning him a cell mate who posed a physical threat. (Complaint, p. 3.)  Plaintiff

essentially alleges failure to protect him from an assault by another inmate.  The

Constitution does not mandate comfortable prisons, but neither does it permit inhumane

ones.  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  It is settled that "the treatment

a prisoner receives in prison and the conditions under which he is confined are subject

to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31

(1993).  In its prohibition of "cruel and unusual punishments," the Eighth Amendment

places restraints on prison officials, who may not, for example, use excessive physical

force against prisoners.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  The

Eighth Amendment also imposes duties on prison officials to provide humane conditions

of confinement and to protect prisoners from violence at the hands of other prisoners.

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  However, while prison administrators

must "take reasonable measures to guarantee the safety of the inmates, they are not

insurers of inmate safety," *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984), and not

every injury suffered by a prisoner at the hands of another prisoner translates into

18

constitutional liability for prison officials.  *Farmer*, 511 U.S. at 834. Only the deliberate indifference of a prison official to a "substantial risk of serious harm to an inmate" violates the Eighth Amendment.  *Id.* at 828.

To establish an Eighth Amendment claim for failure to protect, Plaintiff must (1) satisfy an objective component - that he is incarcerated under conditions posing a substantial risk of serious harm, and (2) a subjective component - that the prison official was deliberately indifferent to his safety.  **Verdecia v. Adams**, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting **Benefield v. McDowall**, 241 F.3d 1267, 1271 (10th Cir. 2001)). The subjective component requires that before liability can be imposed, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting **Craig v. Eberly**, 164 F.3d 490, 495 (10th Cir. 1998).

In **Farmer**, the Supreme Court explained that deliberate indifference requires more than mere negligence, but less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.  **Farmer**, 511 U.S. at 835; **Verdecia,** 327 F.3d at 1175.  The Supreme Court further defined "deliberate indifference" as being equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." **Farmer,** 511 U.S. at 836-37.  The standard requires consciousness of risk, and a decision by the prison official not to act to attempt to abate that risk.  *Id.* at 840.  Negligent failure to protect inmates from assaults by other inmates is not actionable under the Eighth Amendment.  *Id.* at 835; **Davidson v. Cannon**, 474

U.S. 344, 347(1986); ***Daniels v. Williams***, 474 U.S. 327, 330-1 (1986).

**B.      Eighth Amendment Claim against Named Defendants.**

With the exception of Defendant Quintana, Plaintiff alleges that each of the Defendants were aware of his general concerns for his safety because he had been placed at a high-security penitentiary.  He does not claim that each of the Defendants were aware of a specific threat to his safety; nor does he allege that the Defendants were aware of a specific risk and made a conscious decision not to act to attempt to abate that risk.  Plaintiff provides no case law supporting his claim that a mere expression of  concern because he was being housed at a penitentiary creates an Eighth Amendment claim.   Nor does Plaintiff's general concerns about being placed in a penitentiary provide sufficient indicia that an identifiable threat to his safety existed of which Defendants had knowledge.  Thus, Plaintiff can not establish either of the prongs required for a failure to protect claim under the Eighth Amendment against the named Defendants.

**C.      Eighth Amendment Claim against John Doe (a.k.a. John Quintana).**

Plaintiff claims he informed Defendant Quintana of his cell mate's "aggressive posture" and his fear of an eventual confrontation and/or physical assault.  (Complaint, unnumbered p. 2.)  Plaintiff alleges that Defendant Quintana told him to "deal with it." (Response, p. 3).  Plaintiff claims that the aggressive posture he referred to was related to his religious beliefs. (Complaint, unnumbered p. 2.)  Plaintiff is a Muslim. (Id.)

Plaintiff's allegations sufficiently satisfy the objective component of his Eighth

Amendment claims: that there was a serious risk of harm to him at the hands of his cell

mate.  *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("We have great difficulty agreeing

that prison authorities may not be deliberately indifferent to an inmate's current health

problems but may ignore a condition of confinement that is sure or very likely to cause

serious illness and needless suffering the next week or month or year."); *accord Ramos*

*v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980) ("[A]n inmate does have a right to be

reasonably protected from constant threats of violence and sexual assaults from other

inmates. Moreover, he does not need to wait until he is actually assaulted before

obtaining relief.") (citations omitted) *Benefield v. McDowall,* 241 F.3d 1267, 1271 -

1272 (10th Cir. 2001) (holding that suffering physical assaults while in prison is not part

of the penalty that criminal offenders pay for their offenses against society).

    As to the subjective element of his claim, Plaintiff must allege "that the

defendant's conduct is 'in disregard of a known or obvious risk that was so great as to

make it highly probable that harm would follow,' or that the conduct 'disregards a known

or obvious risk that is very likely to result in the violation of a prisoner's constitutional

rights.'" *Verdecia,* 327 F3d at 1175-76 (quoting *Berry v. City of Muskogee*, 900 F.2d

1489, 1494 (10th Cir. 1990)). Plaintiff claims that he informed Quintana of threats and

aggressiveness from his cell mate and that Quintana told him to "deal with it."  Plaintiff's

allegations sufficiently establish that Quintana was subjectively aware of a specific risk

of harm to him by his cell mate, yet did nothing to prevent the harm that ultimately

ensued.   Plaintiff's allegations are sufficient to establish the subjective element of his

Eighth Amendment claim.  This claim should proceed if the District Court rejects the

recommendation with respect to dismiss pursuant to FED. R. CIV. P. 12(b)(1).

### D.     Qualified Immunity.

Defendant argues that all the Defendants– including Quintana–- are shielded

from liability under the doctrine of qualified immunity.  "Government officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982).  The Tenth Circuit has set forth the following method of analysis when the

qualified immunity defense is raised: once the defense has been raised, Plaintiff has the

burden to establish both that Defendant's actions violated a constitutional or statutory

right and that the right was "clearly established" at the time of the relevant conduct.

*Verdecia,* 327 F.3d at 1174.

Ordinarily, in order for Plaintiff to demonstrate that a law is clearly established,

"there must be a Supreme Court or Tenth Circuit decision on point, or the clearly

established weight of authority from other courts must have found the law to be as the

plaintiff maintains." *Medina v. City & County of Denver*, 960 F. 2d 1493, 1498 (10th

Cir. 1992); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (right is clearly

established if the contours of right are sufficiently clear so that a reasonable official

would understand that what he is doing violates that right).  "The relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear

to a reasonable officer that his conduct was unlawful in the situation he confronted."

22

*Saucier v. Katz*, 533 U.S. 194, 194-95 (2001). As the Supreme Court in *Saucier* noted:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense. *Id.* at 205.

The named Defendants are federal officials who were acting within the scope of their official duties at all times relevant to this suit.  Plaintiff has failed to show any constitutional violation in the actions of the named Defendants. Therefore, the named Defendants are entitled to qualified immunity.  Accordingly, Plaintiff's complaint should be dismissed against them.

However, with respect to Defendant Quintana, *Helling* and *Ramos* clearly establish that an inmate has a right to be reasonably protected from constant threats of violence from other inmates, and that he does not need to wait until he is actually assaulted before obtaining relief.  *See Helling,* 509 U.S. at 33; *Ramos,* 639 F.2d at 572.  Plaintiff has sufficiently stated a claim that Quintana had prior knowledge of a specific risk of harm to Plaintiff by his cell mate, but was deliberately indifferent to that risk, resulting in severe injury to Plaintiff.  *See Farmer,* 511 U.S. at 842 (holding that prisoner need not show that a official failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge

of a substantial risk of serious harm.).  Therefore, should the District Court disagree with the recommendation to dismiss this case in its entirety pursuant to **FED. R. CIV. P. 12(b)(1)**, this court should deny Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim pursuant to **FED. R. CIV. P. 12(b)(6)** against John Doe (Quintana).

Accordingly,

**IT IS RECOMMENDED as follows:**

1.  That Defendants' Motion to Dismiss [#42], filed January 30, 2006, **BE GRANTED** pursuant to **FED. R. CIV. P. 12(b)(1);**

2.  That any claims asserted against Defendants in their official and individual capacities **BE DISMISSED WITH PREJUDICE** pursuant to **FED. R. CIV. P. 12(b)(1)**; and

3.  That any claims asserted against Defendant Smith, who has not been served, **BE DISMISSED WITH PREJUDICE, *sua sponte,*** pursuant to **FED. R. CIV. P. 12(b)(1)** as time-barred under the applicable statute of limitations.

**VI.    Advisement to the Parties**.

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  **28 U.S.C. § 636(b)(1); FED. R. CIV. P.  72(b)**;  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. **28 U.S.C. § 636(b)(1)**. A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. ***See In re Griego***, 64 F.3d at 583; ***United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **28 U.S.C. § 636(b)(1)**.

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." ***One Parcel of Real Property***, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. ***See Vega v. Suthers***, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); ***One Parcel of Real Property***, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); ***Int'l Surplus Lines Ins. Co. v. Wyoming Coal Ref. Sys., Inc.***, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).

DATED at Denver, Colorado, this 3rd day of May, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
United States Magistrate Judge